UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Karla J. Tunis | Theresa Lanza |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Douglas Silverstein | J. Kevin Lilly |

**Proceedings:**   (In Chambers)   Order Denying in Part and Granting in Part Defendant's Motion for Summary Judgment

Defendants CNA Casualty of California, Law Offices of Linda M. Libertucci, and Does 1-25, inclusive (collectively "CNA") move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on all five of plaintiff Bari Vaughn's ("Vaughn") claims against CNA for (1) discrimination on account of disability in violation of California Government Code § 12940, (2) failure to prevent discrimination, (3) retaliation (4) wrongful termination, and (5) discrimination on account of exercise of rights to family and medical leave in violation of California Government Code § 12945.2. Vaughn opposes the motion as to all claims.

I.      Legal Standard

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and are not to be engaged in by the Court in deciding a summary judgment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

motion. Id.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the non-moving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

II.  Discussion

All of Vaughn's claims against CNA arise out of the same set of facts. Vaughn was employed by CNA as an attorney from September 1996 through June 2005. She became partially disabled by stress-related gastric ulcer, anxiety and depression in 1999. Vaughn alleges that CNA knew of her disability beginning in 1999, when she filed a worker's compensation claim. She further alleges that CNA reasonably accommodated her disability at various times thereafter, by limiting her case load to 45 cases, as required by her psychiatrist. Beginning in about 2004, her symptoms worsened and she requested that CNA accommodate her disability by limiting her caseload to 45 cases and her workweek to 50 hours. In response, Vaughn alleges, CNA refused to pursue an interactive process with her to determine reasonable accommodations, refused to reasonably accommodate her disability, and ultimately terminated her because of that disability.

    A.    Discrimination on Basis of Disability, Failure to Engage in the Interactive Process, and Failure to Reasonably Accommodate

The first claim in Vaughn's complaint is based on various violations of the California Fair Employment and Housing Act ("FEHA"), including sections that prohibit employers from discharging persons because of a disability, failing to engage in an interactive process with the employee to determine effective reasonable accommodations, and also failing to make such reasonable accommodations. Cal. Gov't Code §§ 12940(a), (n), and (m). The Court evaluates each of these claims in turn, beginning with the primary claim for termination based on disability.

        i.    Termination on Account of Disability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 06-0859 JVS (ANx)                                                    Date  December 12, 2007

Title  Bari Vaughn v. CNA Casualty of California, et al.

      Claims of intentional discrimination on the basis of disability under FEHA are analyzed according to the three-step burden shifting test developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  Liu v. Amway Corp., 347 F.3d 1125, 1143 (9th Cir. 2003); Guz v. Bechtel Nat'l, Inc., 24 Cal.4th 317, 354 (2000) (applying the McDonnell Douglas framework for analyzing federal ADA claims to California FEHA claims).  Under this approach, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  Guz, 24 Cal.4th at 354.  Once the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the employer to show a legitimate, nondiscriminatory reason for its actions.  Id. at 355-56.  If the employer meets that burden of production, the presumption of discrimination disappears and the plaintiff is given an opportunity to demonstrate that the employer's stated reasons are false and a mere pretext for discrimination.  Id. at 356.  Plaintiffs may prove claims of intentional discrimination with either direct or indirect evidence.  Id. at 354.

                    a)      Vaughn's Prima Facie Case

      In order to establish a prima facie case for discrimination on the basis of a disability, an employee must demonstrate that 1) he or she suffers from a disability, 2) he or she is otherwise qualified to do his or her job, and 3) he or she was subjected to an adverse employment action because of the disability.  Deschene v. Pinole Point Steel Co., 76 Cal. App. 4th 33, 44 (1999).

                    1)      Vaughn's Disability

      In this case, the fact that Vaughn is disabled is largely uncontroverted.[1]  Vaughn's history of disability dates to 1998, when she was hospitalized with a severe gastric distress due to a bleeding ulcer, which prompted her to file a worker's compensation claim in March 1999.  (Statement of Undisputed Facts ("SUF") No. 18.)  Her medical expenses were fully reimbursed under the worker's compensation claim.  The psychiatrist

---

[1] CNA disputes that Vaughn's disability does not prevent her from performing certain aspects of her job, including, e.g., meeting with her manager, Linda Libertucci ("Libertucci"). (Reply Br. p. 8-11.)  The Court does not, however, understand this as a refutation of the fact of Vaughn's disability generally.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

who examined Vaughn in connection with the worker's compensation claim diagnosed her with "psychological factors affecting physical condition (gastric ulcer)," and "anxiety disorder not otherwise specified." (Hernandez Decl. Ex. E, "Dr. Preston Report," p. 9.) That psychiatrist also noted that "[t]he predominant cause of Ms. Vaughn's Anxiety Disorder and the condition Psychological Factors Affecting Physical Condition was a stressful work environment and, in [his] opinion, was industrial." (Dr. Preston Report, p. 11.) He characterized her condition as permanent – "there is residual permanent partial psychiatric disability" – and imposed restrictions on Vaughn's return to work, including that she "be precluded from working in an atmosphere of undue emotional stress." (Id. at 10-11; emphasis added.) Vaughn has since also been diagnosed with "major depression." (Kaplan Depo. 47:16-22.)

### 2) Whether Vaughn is "Otherwise Qualified"

CNA argues that Vaughn fails to establish a prima facie case because she does not demonstrate that she is otherwise qualified to do her job. (Opening Br. pp. 12-16.) CNA claims Vaughn was deficient in three areas, including the ability to handle more than 45 cases, to work more than 50 hours per week, and to meet with her supervisor, so that she is not qualified for her job. (Id.)

The Court finds that for the purposes of establishing a prima facie claim,[2] Vaughn is entitled to the inference that her disability did not, in fact, leave her unable to perform the essential functions of her position. First, an "essential functions job analysis" dated August 24, 1999 indicates that Vaughn's position required her to work for 7.5 hours Monday through Friday. (Chopak Depo. Ex. 4.) This amounts to 37.5 hours per week or 1,800 hours per year. William Chopak testified that, while attorneys did not "clock[] in and clock[] out," "on average" they worked about that many hours. (Chopak Depo. 45:11-46:17.) Thus, a reasonable jury could conclude that the 50 hour limit recommended by Dr. Kaplan would not prevent Vaughn from performing the essential

---

[2] The Court undertakes a more extensive analysis of the evidence regarding whether Vaughn fulfilled the allegedly essential functions of her position, particularly whether she refused to meet with her manager, in connection with the discussion of whether Vaughn successfully rebuts CNA's non-discriminatory reasons for her termination . (See Part (c), infra.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
|---|---|---|---|

| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |
|---|---|---|---|

functions of her job.

Second, there is substantial documentation in the record to suggest that the 45 case limitation was in place as early as the time of Vaughn's original worker's compensation claim in 1999. These documents include Dr. Preston's report, dated February 8, 2001, that placed Vaughn under a "work restriction" that she not work in an "atmosphere of undue emotional stress;" a note from Dr. Kaplan, dated March, 2000, stating that "[the] 45 maximum case load should remain indefinitely;" and a vocational rehabilitation progress report, dated April 5, 2000, signed by Paula M. Cannon, including a comment that "Dr. Kaplan . . . not[ed] that she should have a maximum of forty-five cases." (Dr. Preston Report, p. 11; Libertucci Depo. Exs. 201, 202-3.)

There are issues of fact as to whether CNA was aware of this 45 case limit. Of course, CNA can only be liable for refusing to accommodate the disability based limitation if it was aware of the limitation. See, Brundage v. Han, 57 Cal. App. 4th 228, 236-37 (1997). CNA concedes that it was aware of Dr. Preston's report, which was sent to it on or about February 8, 2001. (Hernandez Decl. ¶ 5.) Libertucci, however, denies knowledge of Dr. Preston's prognosis of Vaughn's condition contained in that report, namely that "[f]or so long as [Vaughn] can maintain a reasonable workload, her prognosis is excellent." (Libertucci Depo. 69:20-25; Dr. Preston report p. 12.) Libertucci further denies any knowledge of the 45 case limitation put in place by Dr. Kaplan's March 2000 note and restated in Paula Cannon's vocational rehabilitation progress report. (Libertucci Depo. 64:2-24; Ex. 201.)

On the other hand, Vaughn points to evidence that suggests that Libertucci did, in fact, know of the 45 case limit and that she made efforts to comply with it. Specifically, Libertucci wrote an email to Vaughn on September 6, 2001 stating that Vaughn's case load of 56 was "too much" and that she would "take some cases from [her]." (Libertucci Depo. Ex. 204.) Vaughn replied on September 10, 2001 and agreed that she "need[ed] to get back to the 45 maximum (which should include both active and closing stage cases) ASAP because I am at the point of having to make some more appointments with Dr. Kaplan for stress management." (Id.) Libertucci then sent another email to Vaughn and another managing attorney requesting that he reduce Vaughn's case load to 45 "immediately." (Libertucci Depo. Ex. 203.) At her deposition, Libertucci testified that her invitation to reduce Vaughn's case load had nothing to do with the 45 case limitation imposed by Dr. Kaplan. (Libertucci Depo. 74:24-75:7.) She further testified that she did

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 06-0859 JVS (ANx)                                  Date   December 12, 2007

Title   Bari Vaughn v. CNA Casualty of California, et al.

not know who Dr. Kaplan was at the time she received the email. (Id. 78:10-14.) A reasonable jury could, however, if it did not find Libertucci's testimony credible, find that this evidence gave rise to an inference that CNA was aware of the 45 case limitation on Vaughn beginning as early as 2001.

Thus, the evidence raises issues of fact as to whether and when CNA was informed of Vaughn's disability based limitations, whether CNA ever accommodated those limitations, and whether Vaughn was capable of performing the essential functions of her position even with the limitations.

Therefore, and in light of the simple fact that Vaughn was disabled beginning in 1999 but was retained as an employee until 2005, a reasonable jury could infer that Vaughn was capable of fulfilling, and did in fact fulfill, the essential functions of her position for that period of time, and could consequently infer that she was capable of performing those essential functions at the time CNA terminated her. Compare Deschene, 76 Cal.App. 4th at 46.

3)      Adverse Employment Action

Finally, there is no dispute that Vaughn was subject to adverse employment action when she was terminated effective June 20, 2005. (SUF No. 94.) Furthermore, the Court finds that Vaughn presents sufficient indirect evidence to establish that this action was taken "because of" her disability. Vaughn suffered a relapse of symptoms and was placed on paid leave on November 8, 2004. (SUF No. 67.) She took several weeks of Family and Medical Leave Act ("FMLA") leave thereafter, beginning on November 22, 2004, and never returned to work. (SUF Nos. 68, 70.) During the months of March through June 2005, Vaughn and CNA communicated about the nature of Vaughn's disability and the accommodations that would be required to allow Vaughn to return to work. (SUF Nos. 11, 78, 79, 81, 82, 85, 86, 89.) The termination letter specifically references the accommodations Vaughn requested as grounds for her termination: "We . . . are unable to accommodate the restrictions that you have requested. Based upon your inability or unwillingness to meet with your manager, the permanent restrictions outlined by your doctor, and our obligations to the clients and our business needs, we have determined . . . your employment . . . will be terminated." (Libertucci Depo. Ex. 248; emphasis added.) In light of this evidence, Vaughn's termination was clearly related to the discussions of her disability and the accommodations it would require, so that she is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
|---|---|---|---|
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

entitled to the inference that her termination was "because of" her disability.

Thus, the Court concludes that Vaughn has established a prima facie case for discrimination based on her disability.

### b) CNA's Non-discriminatory Reasons

When a plaintiff establishes a prima facie case, a presumption of discrimination arises. Guz, 24 Cal. 4th at 355. The burden then shifts to the employer to rebut that presumption by producing admissible evidence which is sufficient to raise a genuine issue of fact, and to demonstrate that the action was taken for a legitimate, nondiscriminatory purpose. Id. at 355-56. If the employer comes forward with sufficient evidence, then the presumption of discrimination disappears. Id. at 356. "The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." Id. "The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." Id.

Here, CNA has met its burden of production by presenting sufficient evidence that it had non-discriminatory reasons to terminate Vaughn. As noted above, CNA states that Vaughn was terminated because she was unable to perform the essential functions of her job, including to handle more than 45 cases at a time, to work more than 50 hours a week, and to meet with her manager. (Opening Br. 12-17.) Thus, CNA successfully rebuts the presumption of discrimination that arose with Vaughn's prima facie case.

### c) Vaughn's Evidence of Pretext

Vaughn must now point to evidence that CNA's stated reasons for her termination are false and mere pretext for discrimination based on her disability.

#### 1) The 45 Case and 50 Hour Limitations

Vaughn points to evidence to support the inference that the purported requirements that she handle more than 45 cases and work more than 50 hours were never essential functions of her job. (Opposition Br. pp. 9-10.) She argues that Libertucci's deposition testimony that the "main reason" Vaughn was terminated was that she was unwilling to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

meet with her manager supports this position:

>   Q:   Why did CNA choose to terminate [Vaughn]?
>
>   A:   Her unwillingness to meet with her manager.
>
>   Q:   Any other reasons?
>
>   A:   That was the main reason. We – I – I still think we could have worked on the other – continued discussing it.
>
>   Q:   When you say that [Vaughn's] unwillingness to meet with her manager was the main reason, that suggests to me that there might be other reasons.
>
>   A:   Well, there was the hour and the 45-case limit that was out there but unresolved but unfortunately was resolve by the –
>
>   Q:   Any other reason?
>
>   A:   No.

(Libertucci Depo. 186:23 - 187:11.)

At oral hearing, CNA argued that Libertucci's response, "we could have . . . continued discussing" does not amount to a clear statement that "no, there were no other reasons." Notwithstanding, the Court finds that "no, there were no other reasons" is at least one plausible meaning that a reasonable jury could attribute to this deposition testimony. Thus, a jury could reasonably conclude from this evidence that the only genuine reason for Vaughn's termination was her unwillingness to meet with her manager. On that reading, this testimony directly contradicts Libertucci's letter to Vaughn terminating her employment that lists her unwillingness to meet with her manager <u>as</u> <u>well</u> <u>as</u> the 45 case and 50 hour limitations requested by Dr. Kaplan as grounds for her termination. (Libertucci Depo. Ex. 248.) In light of this conflicting evidence, Vaughn is entitled to the inference that CNA might have been able to accommodate the limitations to 45 cases and 50 hours and that these limitations did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

disqualify her for her job. Moreover, as noted above, Vaughn is entitled to the inference that Libertucci had known of Vaughn's 45 case limitation for several years and had previously accommodated it on occasion.

### 2) Vaughn's Alleged Refusal to Meet With Her Manager

CNA makes much of the Vaughn's purported refusal to meet with her manager, Libertucci, one on one and in person and indicates that it was the "main reason" Vaughn was terminated. (Opening Br. pp. 15-16; Libertucci Depo. 186:23-187:3.) In order for CNA to prevail at summary judgment based on this issue, the Court would have to find that the evidence compels two conclusions as a matter of law: First, that meeting with Libertucci one on one and in person was an essential function of Vaughn's position, and second that Vaughn refused to fulfill this function. The Court finds that the evidence is inconclusive on at least the second of these points and accordingly concludes that material issues of fact remain which must be decided by the jury.

Even assuming that meeting with a manager in person was an essential function of Vaughn's position, the Court finds that the evidence is not conclusive that Vaughn steadfastly refused to meet with Libertucci. Rather, the Court finds that the evidence indicates that Vaughn was willing to meet with her with a representative from human resources present and that she was willing to communicate in writing. Significantly, Vaughn and Libertucci did meet in person meeting on March 31, 2005. (SUF No. 82.) CNA indicates that certain emails dated in October and November 2004, are evidence of the fact that Vaughn refused to meet with Libertucci. However, given that Vaughn did, in fact, meet with Libertucci _after_ those emails were sent, the Court finds that a reasonable jury could not conclude on the basis of the pre-March 2005 emails that Vaughn refused to meet with Libertucci. Similarly, a jury could reasonably conclude from the fact that Vaughn met with Libertucci on March 31, 2005, that Vaughn continued to fulfill this alleged essential function of her position at least through the end of March 2005.

CNA also points to communications subsequent to March 31, 2005 that it claims demonstrate that Vaughn refused to meet with Libertucci, and thus prove her unwilling to fulfill this essential function of her job. Before reviewing this evidence, the Court notes that CNA apparently did not request any further meeting with Vaughn until May 20, 2005. (Libertucci Decl. ¶ 6, 7.) The period during which Vaughn allegedly refused to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
|---|---|---|---|
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

meet with Libertucci can therefore be narrowed to the month-long span between May 20 and June 17, 2005.

The communications transpired as follows: On May 25, 2005, Vaughn responded to Hernandez's May 20th request to meet by stating that that "I cannot meet today because I am still not doing very well since our last meeting and [Libertucci's] letter. My depression an anxiety symptoms are very bad right now and we are trying new additional medication to try to get me back to where I was," and she made the arguably reasonable request that the agenda for meetings be "placed in writing in advance." (Hernandez Decl. Ex. D.) Then, by letter dated June 3, 2005, CNA again requested to meet with Vaughn no later than June 10, 2005 – one week after the date of that letter. (Libertucci Decl. Ex. B.) Vaughn responded within the week by a letter which indicated that she was unavailable to meet before June 14, 2005. (Libertucci Decl. Ex. C.) In that letter she enclosed a further note from Dr. Kaplan with clarification on the nature of the requested accommodations. (Id.) On June 15 and 16, 2005, Vaughn requested that Libertucci engage her in a written dialogue and that she be allowed to have a third party present at a scheduled in-person meeting. (Libertucci Decl. Exs. E, D.) In response, on June 17, 2005, Libertucci sent Vaughn the letter terminating her. The termination letter was sent exactly two weeks after the date of the June 3, 2005 letter that requested an in-person meeting. (Libertucci Depo. Ex. 248.)

The Court finds that a reasonable jury could conclude from this evidence that between May 20 and June 17, 2005, Vaughn did not refuse to meet with Libertucci outright.[3] But rather, a fact finder could conclude that on one occasion, May 25th, Vaughn provided a legitimate excuse as to why she could not meet on the specified date. It also could conclude that Vaughn's subsequent requests that Libertucci engage in a written dialogue with her and that she be allowed to have a third party present at meetings did not constitute refusal to meet. A jury could infer that Vaugh's ability to meet and communicate with her manager was not impacted given that Vaughn was in close contact

---

[3] CNA's argument at oral hearing that certain undisputed facts based on, e.g., deposition testimony of Vaughn's psychiatrist, compel the conclusion that Vaughn's disability did not prevent her from meeting with her manager. (See, SUF Nos. 58, 92.) This contention is, however, irrelevant to the Court's conclusion that a jury could conclude on the factual record that Vaughn did not outright refuse to perform the essential function of meeting with her manager.

Case 8:06-cv-00859-JVS-AN   Document 62   Filed 12/12/07   Page 11 of 20   Page ID #:109

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 06-0859 JVS (ANx)                                Date  December 12, 2007

Title  Bari Vaughn v. CNA Casualty of California, et al.

with Libertucci by email during this period of time. Indeed, Vaughn forwarded further information from her doctor to Libertucci on June 7, and the day before Libertucci sent the termination letter, Vaughn responded by email before the close of business to a message Libertucci left that morning.

Alternatively, there is evidence from which a jury could infer that Vaughn's inability to meet with her manager was part of, or at a minimum, caused by her disability. (Opposition Br. p. 20.) Generally speaking, "conduct resulting from a disability is considered to be part of the disability," and therefore does not constitute "a separate basis for termination." Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1140 (9th Cir. 2001). Dr. Preston's report specifically articulates that "anxiety, distrust and loss of self-confidence interfere with getting along with others, negotiating with others and responding appropriately to criticism." (Hernandez Decl. Ex. E.) The Court finds that this evidence supports an inference that Vaughn's pre-existing disabling condition contributed to her inability to meet with her manager.[4]

For all the reasons outlined above, the Court finds that Vaughn has made a sufficiently strong evidentiary showing to support an inference that CNA's termination of Vaughn was actually motivated by impermissible discrimination, notwithstanding any other motives that it identifies. (Contrast, Guz 24 Cal.4th at 362.) Accordingly, the Court denies CNA's motion for summary judgment as to Vaughn's claim for discrimination based on disability.

ii.     Failure to Engage in the Interactive Process

Vaughn claims that CNA violated FEHA by failing to engage in an interactive process with her to determine reasonable accommodations. Cal. Gov't Code § 12940(n). "[T]he interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively." Jensen v. Wells Fargo Bank, 84 Cal. App. 4th 245, 261 (2000) (internal quotations and

---

[4] This inference is distinct from CNA's assertion that Vaughn is not entitled to any accommodation for limitations arising from a "personality conflict" with her manager. (Reply Br. p. 10, citing Palmer v. Circuit Court of Cook County, 117 F.3d 351, (7th Cir. 1997).)

Case 8:06-cv-00859-JVS-AN   Document 62   Filed 12/12/07   Page 12 of 20   Page ID #:110

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 06-0859 JVS (ANx)                                    Date   December 12, 2007

Title   Bari Vaughn v. CNA Casualty of California, et al.

citations omitted). "[F]or the process to work both sides must communicate directly, exchange essential information and neither side can delay or obstruct the process." Id. "[A]n employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." Id.

In this case, Vaughn has successfully established to genuine issues of fact as to whether CNA engaged in the interactive process in good faith. The evidence shows that Vaughn sent an email to Libertucci regarding clarifications of Dr. Kaplan's articulation of Vaughn's limitations on June 15, 2005. (Libertucci Decl. Ex. D.) Without responding to that email, two days later, Libertucci sent Vaughn the letter terminating her. (Libertucci Depo. Ex. 248.) Moreover, Libertucci testified that Vaughn's requests for accommodation were "unresolved" at the time she was terminated. (Libertucci Depo. 187:8.) A reasonable jury could infer from this evidence that the interactive process was still on-going at the time that CNA terminated Vaughn. The Court finds that the evidence does not conclusively demonstrate that the process broke down or that, if it did, one or the other party was definitively responsible for the break down. Thus, the Court concludes that triable issues of fact exist as to whether CNA failed to engage in the interactive process in good faith.

Accordingly, the Court denies CNA's motion on Vaughn's interactive process claim.

### iii.   Failure to Make Reasonable Accommodation

Vaughn also claims that CNA is liable for failing to provide her with reasonable accommodations. Employers must provide reasonable accommodation for an employee with a known mental or physical disability, unless such accommodation would cause undue hardship to the employer. Cal. Gov. Code § 12940(m). "In order to state a claim for failure to accommodate, a plaintiff must allege that he suffers from a disability covered by the FEHA. . . . [However,] a plaintiff need not establish that an adverse employment action was taken against him." Hurley v. Pechiney Plastic Packaging, Inc., 2006 U.S. Dist. LEXIS 15760 at 17 (N.D. Cal. March 16, 2006); Jensen, 85 Cal. App. 4th at 256.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 06-0859 JVS (ANx)   Date  December 12, 2007

Title  Bari Vaughn v. CNA Casualty of California, et al.

        a)       Reasonable Accommodation

       CNA does not to dispute that Vaughn suffered from a disability covered by FEHA at all relevant times.[5] "[A]ssuming the employee is disabled, the employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." Jensen, 85 Cal. App. 4th at 263.

       CNA has not established any of these three propositions with uncontroverted facts. First, CNA does not demonstrate that it offered a reasonable accommodation which Vaughn refused. In fact, the evidence suggests that CNA never proposed any accommodation at all. Specifically, Libertucci's June 3rd letter to Vaughn states "we need additional documentation from your physician in order to evaluate our proposed accommodation for your return to work." (Libertucci Decl. Ex. B.) Further, Libertucci testified that the parties were "still working on [the accommodations requested]" and the status of the requests was "unresolved." (Libertucci Depo. 187:2, 8.) Thus, CNA has failed to demonstrate that it proposed a reasonable accommodation to Vaughn and that she refused such proposal.

       Second, CNA has provided no evidence to support a finding, or even an inference, that there were no vacant positions in the organization for which Vaughn was qualified and capable of performing with or without accommodation. The termination letter baldly asserts that Vaughn's requested accommodation would amount to a "part time position" and that there were no "part time trial attorney positions in [that] office." (Libertucci Depo. Ex. 248.) However, when Libertucci was asked whether she ever considered transferring Vaughn to another position, she responded, "I don't recall." (Libertucci Depo. 183:11-15.) Therefore, CNA has also failed to demonstrate that there were no

---

       [5]  CNA does dispute whether Vaughn's disability rendered her unable to meet with her manager, but the Court does not interpret this as a denial of the fact of Vaughn's disability. (See note 1, supra.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

vacant positions in which it could have placed Vaughn.

As discussed more fully in connection with the interactive process claim above, CNA does not conclusively demonstrate that it "did everything in its power to find a reasonable accommodation, . . . [and that] the informal interactive process broke down because the employee failed to engage in discussions in good faith." Jensen, 85 Cal. App. 4th at 26 (emphasis added).

Moreover, the well-settled principle that employers are under a "continuing duty" to accommodate that is "not exhausted by one effort" has particular resonance here. McAlindin v. County of San Diego, 192 F.3d 1226, 1237 (9th Cir. 1999); Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1138 (9th Cir. 2001). At a minimum, CNA admits that it was on notice of Vaughn's disability when it received Dr. Preston's report in 2001. CNA nonetheless makes much of the fact that it did not have documentation of Vaughn's disability when she made repeated requests for accommodation during subsequent years, including, e.g., in April and May 2004. (Libertucci Depo. Ex. 224; Vaughn Depo. Ex. 31.) Whether or not Libertucci, or any other individual at CNA, had an updated doctor's note is irrelevant, given that CNA was under a continuing duty to accommodate Vaughn's disability beginning, at the latest, in 2001. At oral hearing, CNA argued that certain undisputed facts lead inevitably to the conclusion that, because attorneys' jobs at CNA became more demanding over the years, Vaughn was not entitled to an accommodation of a 45 case maximum in 2004, even if she had previously been entitled to one. (SUF Nos. 6-12.) The Court finds that these contentions do not change the fact that CNA was under an on-going duty to accommodate Vaughn. The argument simply raises factual issues as to the reasonableness of the accommodation Vaughn requested and the ability to make the requested accommodation or provide an alternative.

Therefore, CNA has failed to show that it provided Vaughn with a reasonable accommodation as required under the statute.

### b) Undue Hardship

Moreover, Vaughn claims that CNA cannot prevail at summary judgment on the reasonable accommodation claim because it has failed to bring forward evidence of the undue hardship the reasonable accommodations would cause. (Opposition Br. p. 17, 21-22.) FEHA defies "undue hardship" as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 06-0859 JVS (ANx)                                Date   December 12, 2007

Title   Bari Vaughn v. CNA Casualty of California, et al.

an action requiring significant difficulty or expense, when considered in light of the following factors:
(1) The nature and cost of the accommodation needed.
(2) The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility.
(3) The overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type and location of its facilities.
(4) The type of operations, including the composition, structure, and functions of the workforce of the entity.
(5) The geographic separateness, administrative, or fiscal relationship of the facility or facilities.

Cal. Gov't Code § 12926(s).

     Here, CNA provides almost no evidence regarding the burdens Vaughn's requested accommodations, including the 45 case limit and the 50 hour limit, would impose on the operation or finances of the organization. Indeed, viewed in the light most favorable to the non-moving party, the evidence could support an inference that CNA had not yet fully evaluated the burdens the requested accommodations would pose when it terminated Vaughn. With regard to the 45 case limitation, Libertucci testified that she "did feel that it would be a burden to the other attorneys. But we wanted to work on that issue, and we never got to the point of making a final decision . . . . I was afraid it would be a burden on the other attorneys." (Libertucci Depo. 176: 9-16.) CNA does not quantify the financial or operational burden which Vaughn's requested accommodations would have entailed. A jury could reasonably infer from Libertucci's testimony that CNA had not yet ascertained whether the requested accommodations posed an undue burden, and therefore that CNA's rejection of Vaughn's accommodations could not have been based on the conclusion that they were unduly burdensome.

     Furthermore, Vaughn argues that her 45 case limitation was sporadically accommodated after it was put in place in 2000. (Opening Br. p. 17.) As discussed above, a jury could reasonably infer from the correspondence between Libertucci and Vaughn in September 2001 that Libertucci made an effort at that time to reduce Vaughn's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 06-0859 JVS (ANx)                    Date  December 12, 2007

Title  Bari Vaughn v. CNA Casualty of California, et al.

caseload to the 45 case limit imposed by Dr. Kaplan. If a jury were to conclude that Libertucci did, in fact, previously accommodate the 45 case limitation, then the jury could also draw the conclusion that the 45 cases limit did not pose an undue burden on CNA.

Accordingly, the Court finds that genuine issues of material fact remain as to whether CNA fulfilled its obligations to make reasonable accommodations for Vaughn or whether it was relieved of this duty due to the undue hardship such accommodations would pose. Therefore, CNA is not entitled to summary judgment on Vaughn's claim for failure to reasonably accommodate.

    B.    <u>Failure to Prevent Discrimination</u>

It is an unlawful employment practice under FEHA "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination . . . from occurring." Cal. Gov't Code § 12940(k). Claims for failure to prevent discrimination depend on a finding of underlying discrimination. <u>Trujillo v. North County Transit District</u>, 63 Cal. App. 4th 280, 288-89 (1998). Thus, if Vaughn can prove that she was discriminated against based on her disability, as the Court found above that she potentially can, then she has met the threshold to prove her claim for failure to prevent discrimination.

Claims for failure to prevent discrimination are negligence based "tort[s] made actionable by statute," so that their analysis centers on the general elements of tort, including duty, breach, causation, and damage. <u>Trujillo</u>, 63 Cal. App. 4th at 286-87. The Court finds that the evidence in this case raises issues of fact as to whether CNA breached its duty to prevent discrimination.

Specifically, the Court finds that the evidence supports an inference that CNA was aware of allegations of discrimination against Libertucci. For example, a complaint was filed by Nancy J. Presher against Linda Libertucci and CNA for discrimination based on physical disability on March 2, 2004. (Vaughn Decl. Ex. A.) Also, Hernandez testified[6]

---

[6] To be precise, Hernandez amended her deposition testimony to include this statement. (Supp. Jacob Decl. Ex. A.) The Court declines to strike Vaughn's supplemental submission in light of the fact that it was based on new information and that CNA has already taken the opportunity to respond. (<u>See</u>, Def's Motion to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

at her deposition that "an informal complaint [against Libertucci] was made by Susan Katz stating that she should have been paid a bonus while out on disability leave. This was corrected." (Hernandez Depo. 55:24 - 57:8; Supp. Jacob Decl. Ex. A.)

If a jury found that CNA was aware that other allegations of disability discrimination had been made against Libertucci and did not take appropriate action to prevent future discrimination, it could find that CNA breached its duty to prevent discrimination. (Supp. Opposition Br. pp. 2-3.) Further, the parties present essentially no evidence on the question of what actions CNA took or failed to take with regard to its knowledge of the allegations of discrimination against Libertucci.

Accordingly, the Court finds that there are genuine issues of fact regarding Vaughn's claim that CNA failed to prevent discrimination against her.

C.   Retaliation

FEHA makes it unlawful for "any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this [FEHA]." Cal. Gov't Code § 12940(h). "To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subject to adverse employment action by her employer, and there was a causal link between the two." Guthrey v. State of California, 63 Cal. App. 4th 1108, 1125 (1998) (internal quotation marks and citation omitted).

The parties do not dispute that Vaughn engaged in protected activities when she requested reasonable accommodation for her disability and objected to allegedly discriminatory treatment by Libertucci. (Opening Br. p. 22.) Neither is there dispute as to whether Vaughn's termination constituted adverse action by CNA. The parties' dispute centers on the casual link between these events. (Id.) The Court finds that the evidence supports an inference that Vaughn's termination was, at least in part, a retaliation against her for objections to Libertucci's allegedly discriminatory actions. Perhaps the most obvious support for this inference is the fact that Vaughn was placed on administrative leave pursuant to a letter date November 8, 2004, which specifically

---

Strike, or in the alternative, Reply to Pltf's Supplemental Brief in Opposition.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

references Vaughn's November 3, 2004 email to Libertucci in which Vaughn vehemently objected to Libertucci's treatment of her as discriminatory. (SUF No. 67; Libertucci Depo. Exs. 231 and 232.) Moreover, the Court finds that the same evidence that raises genuine issues of material fact with regard to whether Vaughn was terminated because of her disability, as discussed above, also raises issues of fact that are material to the retaliation claim, including issues pertaining to Libertucci's and other defendants' mental states and motivations for terminating Vaughn.

Accordingly, because the Court finds that genuine issues of fact exist as to Vaughn's claim for retaliation, it concludes that CNA cannot prevail on this claim at summary judgment.

### D. Wrongful Termination

"In order to establish a common law cause of action for wrongful termination in violation of public policy the plaintiff must identify a public policy which: (1) is supported by a constitutional or statutory provision; (2) inures to the benefit of the public at large; (3) is fundamental and substantial; and, (4) is well established at the time of plaintiff's discharge." Deschene, 76 Cal. App. 4th at 43.

The Court agrees with CNA that Vaughn's claim for wrongful termination depends on the success of her claims for violations of the FEHA provisions. (Opening Br. p. 23-24.) Thus, if Vaughn's FEHA claims failed to survive summary judgment, she would have no violation of public policy on which to predicate her claim of wrongful termination. The application of the rule in this instance, however, compels the inverse conclusion. Thus, since Vaughn's FEHA claims survive summary judgment, so, too, does her wrongful termination claim. Since the Court finds that there are material issues of fact as to whether CNA violated FEHA when it terminated Vaughn, there are also issues of fact as to whether it wrongfully terminated Vaughn in violation of public policy.

Accordingly, the Court denies CNA's motion for summary judgment as to Vaughn's wrongful termination claim.

### E. Violation of California Government Code § 12945.2

Vaughn's final claim is based on the Family Rights Act provision which makes it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 06-0859 JVS (ANx)   Date   December 12, 2007

Title   Bari Vaughn v. CNA Casualty of California, et al.

unlawful "for an employer to . . . discharge . . . or discriminate against, any individual because of . . . [a]n individual's exercise of [the right to take up to a total of 12 workweeks in any 12-month period for family care and medical leave]."  Cal. Gov't Code § 12945.2(l).

The parties do not dispute that Vaughn was granted the maximum of 12 weeks of leave to which she was entitled under the FMLA and the California Family Rights Act. (SUF Nos. 70, 73 - 75.)  However, Vaughn argues that this uncontroverted fact does not exclude the possibility that CNA violated Government Code § 12945.2(l) when it terminated her because she took this leave.  (Opposition Br. p. 24-25.)  She supports this argument with a citation to Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001), interpreting a similar FMLA provision, in which the court concluded that "attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights: Employees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so."  The Ninth Circuit then set forth this rule:  "In order to prevail on her claim, therefore, [plaintiff] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her."  Bachelder, 259 F.3d at 1125 (interpreting Dept. of Labor Reg. 29 C.F.R. 825.220(c)).

Applying this rule to the Family Rights Act claim at issue here, the Court finds that Vaughn has failed to point to any evidence, direct or circumstantial, that would support an inference that CNA terminated her because she took FMLA leave.  As discussed above, the evidence supports her claims that she was terminated because of her disability and in retaliation for protected activities, including objecting to alleged discrimination and requesting accommodations.  However, none of the evidence supports the rather narrow inference that Vaughn was terminated because she took leave to which she was statutorily entitled.  Thus, the Court finds that there is no genuine issue as to whether CNA terminated Vaughn because she took FMLA leave.

Accordingly, the Court grants CNA's motion for summary judgment as to Vaughn's claim under Government Code § 12945.2.

III.   Conclusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 06-0859 JVS (ANx) | Date | December 12, 2007 |
| Title | Bari Vaughn v. CNA Casualty of California, et al. | | |

    For the reasons discussed above, the Court denies CNA's motion for summary judgment as to Vaughn's claims for discrimination based on disability, failure to engage in the interactive process, failure to make reasonable accommodations, failure to prevent discrimination based on disability, retaliation, and wrongful termination, and grants the motion as to Vaughn's claim under Cal. Gov't Code § 12945.2.

|  |  |  |  |
|---|---|---|---|
|  |  | 00 : 00 |
| | Initials of Preparer | kjt | |